1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA CHILEY, | Case No. 1:14-cv-1373-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Nina Chiley ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

---

[1]     Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 9).

**FACTS AND PRIOR PROCEEDINGS**

On November 2, 2011, Plaintiff filed her current application for SSI, alleging disability beginning March 1, 2011. AR 16.[2]   Plaintiff's application was denied initially and on reconsideration.  AR 16.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Timothy Snelling held a hearing on June 26, 2013, and issued an order denying benefits on July 26, 2013.  AR 16-24.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-3.  This appeal followed.

**Plaintiff's Testimony**

The ALJ held a hearing on June 26, 2013, in Stockton, California. AR 29-54. Plaintiff appeared and testified with the assistance of a translator.  AR 31. She was also represented by non-attorney representative, Svetlana Kumansky.  AR 31.

Plaintiff was born on February 24, 1966, and was 47 years old at the time of the hearing. AR 26.  Plaintiff testified that she came to the United States from Ukraine with her husband and three small children.  AR 47. Plaintiff currently has 6 children, all between the ages of 8 and 20, who live with her at her home.  AR 47.  Prior to suffering from her impairments, Plaintiff graduated from high school in Ukraine and was "starting college to be a pre-school teacher" in the United States. AR 37.

Plaintiff alleges disability due to "severe back pain." AR 38.  Plaintiff alleged that her pain is so severe that she could not bend or lift a cup of tea without pain.  AR 38-39.  Plaintiff experiences pain, which is usually at an 8 or 9 on a scale of 1-10 at night, when she "tries to do something." AR 39-40.  Plaintiff further testified that when she tried to walk outside, after 15-10 minutes, the pain in her left leg caused her to walk with a limp. AR 40.  About twice per year, Plaintiff testified that she must use a walker and she could not do anything but lie down for 2 weeks-1 month.  AR 40-41. Due to her impairments, Plaintiff testified that she could only stand for 15-20 minutes.  AR 40.  In addition to her back problems, Plaintiff testified that she has diabetes, which caused fatigue and numbing in her hands; because of this, Plaintiff needs to frequently lie down. AR

---

[2]         References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

41.  Plaintiff also testified that she has high blood pressure and shortness of breath, which prevents her from sleeping well at night.  AR 42.

Thereafter, the ALJ asked Plaintiff about her work history.  In response to the ALJ's questions, Plaintiff testified that, as a caregiver for the elderly, she went to their homes, went shopping for her clients, and she cooked for them.  AR 45.  While Plaintiff testified that she paid income taxes, the ALJ indicated that her certified earnings report showed no earnings at all.  AR 45. Plaintiff's representative claimed that this could result if Plaintiff jointly filed her taxes at that time with her husband.

**Medical Record**

The entire medical record was reviewed by the Court. AR 180-408. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 16-24.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 2, 2011.  AR 18. Further, the ALJ identified hypothyroidism, diabetes mellitus, gastrophageal reflux disease, hypertension, degenerative disc disease at the L4-5 with herniation and nerve root compression, left lumbar spine radiculopathy and left leg paresthesia, and polyneuropathy as severe impairments.  AR 18.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 19.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work; and she can occasionally climb, balance, stoop, kneel, crouch and crawl.  AR 17.  Ultimately, the ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy.  AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff raises four arguments challenging the ALJ's decision. Plaintiff contends the ALJ erred when he: (1) discredited her treating physicians; (2) found that Plaintiff's back pain did not meet or equal Listing 1.04A; (3) improperly discredited Plaintiff's subjective symptoms; and (4) found that Plaintiff could speak English. (Doc. 14).

### 1.     The ALJ Properly Discounted the Opinions of Plaintiff's Treating Physicians

In her first issue, Plaintiff argues that the ALJ erred by failing to adopt the opinions of her two treating physicians, Dr. Blusoshetyn and Dr. Sukharev. (Doc. 14 at 7). The Commissioner

4

asserts, however, that the ALJ considered all of the medical evidence and properly rejected the treating physicians' opinions. (Doc. 15 at 12-15).

###    A.    Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on

[the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52. The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests. *Id.*

With regard to Plaintiff's treating physicians' opinions, the ALJ found:

> Sasha A. Bluoshteyn, M.D., who has treated the claimant, completed a medical source statement dated May 9, 2012. Dr. Bluoshteyn opined that the claimant can walk one hour during an eight hour workday without interruptions. She can stand one hour during an eight-hour workday for 20 minutes without interruption. She can sit for three hours during an eight-hour workday [and] for 10 minutes without interruption. She can never lift or carry. She is partially restricted in her ability to climb stairs or ladders. Dr. Bluoshteyn opined that the claimant is not capable of performing a full range of sedentary work. She is unable to work an eight-hour day for five days per week because of pain. Dr. Bluoshteyn reported that [the claimant] may have some improvement in pain. Further physical therapy may also improve symptoms.

> Dina Sukharev, M.D., who has treated the claimant at Paradise Medical Office, completed a medical source statement dated September 26, 2012. Dr. Sukharev opined that the claimant can lift or carry less than 10 pounds frequently. Dr. Sukharev noted that she was unable to access [sic] limitations related to the claimant's ability to sit. The claimant would need to alternate from standing to sitting. However, a specific frequency or duration of changing positions was unable to be assessed. Dr. Sukharev was also unable to assess any postural or environmental limitations.

> I give reduced weight to Dr. Bluoshteyn and Dr. Sukharev's opinions. The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. Furthermore, the treating physician's opinions are somewhat different. Dr. Sukharev reported that she was unable to access [sic] limitations in all areas except the claimant's ability to lift or carry. However, Dr. Bluoshteyn gave highly conservative limitations that are not supported by the objective findings. Further, the claimant's inability to comply with treatment is considered. Dr. Bluoshteyn himself mentioned that the claimant's pain may improve with physical therapy.

AR 22-23.

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting her treating physicians' opinions. (Doc. 14 at 10). Furthermore, Plaintiff argues the ALJ erred in discounting the treating physicians' opinion because Plaintiff's course of treatment was not consistent with her disability. According to Plaintiff, the ALJ had a duty to specify what treatment would support her allegations of disability. (Doc. 14 at 9). The Court disagrees and finds that Plaintiff's argument is misguided. In evaluating the medical evidence, the ALJ summarized the

medical records and outlined the basis for his conclusions.   The ALJ then rejected the treating physicians' opinions for several reasons which was his duty. AR 22-23.

First, the ALJ noted that Plaintiff's treating physicians prescribed only conservative treatment despite reports that Plaintiff was significantly limited.   AR 23.   The ALJ reduced the weight accorded to Dr. Bluoshteyn's opinion because he opined that Plaintiff could never lift or carry any weight at all (AR 368), yet Plaintiff admitted that she could wash dishes and go grocery shopping with assistance. AR 144-145. An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician where physician had prescribed conservative treatment and plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment). It was not error for the ALJ to reject Plaintiff's treating physician evidence because the extreme limitations asserted by the treating physicians were not justified by the evidence.

Second, an ALJ need not accept the opinion of even a treating physician if that opinion is inadequately supported "by the record as a whole."   *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).   Typically, the lack of medical evidence supporting a treating physician's opinion is a legitimate basis to reject it. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, *as amended on reh'g* (9th Cir. 2001) (rejecting treating physician's opinion that claimant suffered from a herniated disk where no MRI scan ever showed a herniated disk); 20 C.F.R. § 404.1527(c)(3) (in determining the weight to give to the opinion of a treating physician, the ALJ should consider factors such as the degree to which the opinion is supported by relevant medical evidence).   Here, the treating physicians based their findings on Plaintiff's "disk protrusion" of the "LR/L5."   Plaintiff, however, was also treated for her disk protrusion by Tamim Wafa, M.D., who administered a lumbar steroid injection.   AR  240.   During her hospital stay, Plaintiff was observed "ambulating to the restroom normally," she was "much improved with meds," with "no foot drop" and "no weakness."   AR 251. After receiving the injection, Plaintiff was discharged to her home with "all systems negative" except moderate pain.   AR 250- 251.   Dr. Wafa's treatment notes undermine the opinions offered by Drs.  Bluoshteyn and Sukharev based on the same medical evidence.   While Plaintiff argues that the objective medical evidence supports her treating

physicians' opinions and not the objective findings expressed by Dr. Wafa, this Court will not second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to Plaintiff. *See Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

Similarly, the ALJ noted that, in rejecting the treating physician evidence, he took into consideration Plaintiff's refusal to participate in physical therapy as prescribed.  AR 23.  *See* 20 C.F.R. § 416.930; *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated...."), *quoting Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted).  The ALJ noted that even treating physician Dr. Bluoshteyn noted that Plaintiff will experience improvement with physical therapy and medication.  *See* 20 C.F.R. §§ 404.1530(a) and 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."); 20 C.F.R. §§ 404.1530(b) and 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled.").  Based on this evidence, it was not error for the ALJ to find that the treating physicians' significant limitations are not supported by the record.

Lastly, the ALJ noted that Dr. Sukharev's opinion was inconclusive as she opined that Plaintiff could not lift 10 pounds, could only stand and/or walk less than 2 hours in an 8-hour workday, and needed to alternate between standing and sitting, but she was unable to assess Plaintiff's ability to do anything else. Dr. Sukharev admitted that she could not assess Plaintiff's ability to sit, climb, balance, stoop, kneel, crouch, crawl, reach, finger, handle, or feel, or how often Plaintiff needed to change positions.  AR 22-23, 355-356. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary"). It was not error for the ALJ to afford less weight to Dr. Sukharev's inconclusive and incomplete opinion.

Here, instead of relying on the problematic opinions of the treating physicians, the ALJ gave substantial weight to the opinion of examining physician, Fariba Vesali, M.D.  AR 22.  The opinion of an examining physician may serve as substantial evidence when it is consistent with other

independent evidence in the record. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  On February 13, 2012, Dr. Vesali, M.D., performed a comprehensive orthopedic evaluation of Plaintiff. Dr. Vesali noted that Plaintiff did not use an assistive device for walking.  AR 290. Upon examination, Plaintiff complained of pain on range-of-motion testing in the spine, straight leg raising was negative seated bilaterally, and she complained of low back pain with radiation to the left leg and foot in the supine position.  AR 291.  Dr. Vesali noted tenderness in the left leg and low back. AR 291.  Plaintiff however demonstrated normal muscle bulk and tone, strength of 5 out of 5 in the upper and lower extremities, and 2+ deep tendon reflexes.  AR 291-292.  Dr. Vesali found that Plaintiff could sit for 6 hours in an 8-hour day with breaks every hour for stretching and changing positions.  Plaintiff could also lift and carry 20 pounds occasionally and 10 pounds frequently with occasional postural activities.  AR 292. Dr. Vesali's opinion is consistent with the opinions of the State Agency physicians and the record as a whole. The ALJ assessed the reviewing physicians' opinions as follows:

> L. Kiger, M.D., a State agency medical consultant, completed a medical source statement dated February 28, 2012.  Dr. Kiger opined that the claimant can lift or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk six hours during an eight hour workday.  She can sit six hours during an eight-hour workday.  She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl and never climb ladders, ropes, or scaffolds.

> J. Linder, M.D., a State agency medical consultant, completed a medical source statement dated October 24, 2012.  Dr. Linder opined that the claimant can lift or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk six hours during an eight-hour work day.  She can sit six hours during an eight-hour workday.  She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl and never climb ladders, ropes or scaffolds.

> AR 22.

The ALJ gave more weight to the opinions of Dr. Vesali because she gave a thorough physical examination.  AR 22.  Dr. Vesali's opinion was also consistent with the opinions of the revieiwing physicians and was further bolstered by Plaintiff's conservative treatment and failure to follow prescribed treatment. AR 22.   Given that Dr. Vesali's opinion is supported by other evidence in the record, the ALJ was correct to credit her opinion as substantial evidence.

The ALJ summarized the facts and conflicting evidence in a detailed and thorough manner, stating his interpretation and making findings. Thus, his conclusion is entitled to deference. The ALJ provided legally sufficient reasons, based on substantial evidence in the record, for discounting the

opinions of Drs. Bluoshteyn and Sukharev. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings") (*citing Magallanes*, 881 F.2d at 751). Accordingly, remand on this issue is not warranted.

### 2.    The ALJ Did Not Err at Step Three

Next, Plaintiff contends that she meets Listing 1.04 (disorders of the spine) because her degenerative disc disease and nerve root compression meet the requirements for this listing.   The Commissioner responds that Plaintiff's subjective belief, unsupported by evidence in the record, fails to establish that her impairments meet or equal Listing 1.04A.

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Id.* (citing 20 C.F.R. § 404.1525). If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. *Tackett*, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1520(d)).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. *Tackett*, 180 F.3d at 1099 ("[Claimant] had to establish that he [or she] met or equaled each of the following characteristics of a listing."). "For a claimant to show that his [or her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original). If a claimant's impairment or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs. 20 C.F.R. § 404.1520(d).

### A.    Listing 1.04A Criteria

Listing 1.04 requires a finding of disability for an individual who (a) has a "[d]isorder[] of the spine" such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture," (b) that results in compromise of a

nerve root or the spinal cord, and (c) which is accompanied by the additional requirements set forth under section 1.04(A), 1.04(B), or 1.04(C). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. Section 1.04(A), the section at issue here, requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* § 1.04(A).

A claimant's diagnosis is not the sole criterion for determining whether he or she meets the listing criteria. "The statute generally defines 'disability' in terms of an individualized, functional inquiry into the effect of medical problems on a person's ability to work." *Sullivan*, 493 U.S. 521 at 528. "The mere existence of an impairment is insufficient proof of disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A plaintiff bears the burden of producing medical evidence establishing the existence of an impairment, its severity, and how it affects the plaintiff's functioning. 20 C.F.R. § 404.1512 (c).

All musculoskeletal disorders included within 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 1.00, require that the claimant's condition result in loss of function. 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 1.00 B.1. "Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 1.00 B.2.a.  The claimant's inability to ambulate effectively must have lasted or be expected to last at least 12 months. *Id.*

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit effective ambulation without the use of a handheld assistive device(s) that limits the functioning of both lower extremities.

> 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 1.04A.2.b.

11

Plaintiff fails to establish that she meets the requirements for Listing 1.04A for two reasons. First, the ALJ evaluated the medical evidence in the record and noted that "Plaintiff does not use an assistive device for ambulation."   AR 21. Further, the ALJ noted that "there is no hard and fast evidence regarding the poor use of [Plaintiff's] extremities."   AR 22.   The evidence cited by the ALJ is furthered supported by Plaintiff's own statements to her treating physician Dr. Sukharev which indicated that "Plaintiff refused to use a walker or cane."   AR 355. Because the ALJ found that Plaintiff did not require an assistive device to ambulate, Plaintiff does not meet all the requirements on Listing 1.04A.

Second, while Plaintiff alleges that she meets this Listing, she does not cite to supporting evidence—as is her burden. *See Burch*, 400 F.3d at 683 (claimant bears the burden of proving that she has an impairment that satisfies the criteria of a listed impairment). While an MRI shows degenerative disc disease, and disk protrusion (AR 270), Plaintiff does not demonstrate the requisite motor loss, sensory or reflex loss.   AR 240.   *See Coelho v. Colvin*, 525 Fed.Appx. 637, 639 (9th Cir. 2013) (unpublished) (citing the absence of evidence of motor loss, sensory loss, or reflex loss, the ALJ reasonably concluded that claimant's spinal impairment did not meet Listing 1.04(A); although claimant argues that the ALJ's explanation was inadequate, claimant was required to support her claim with objective medical evidence, but only cites medical findings that either were remote in time or merely repeated her self-report of symptoms – the ALJ was "entitled to disregard these findings without additional elaboration"); *see also Shaw v. Astrue*, 2013 U.S. Dist. LEXIS 7413, 2013 WL 204742 (E.D. Cal. Jan. 16, 2013) (Plaintiff failed to identify medical evidence demonstrating he meets or equals a listing and therefore failed to carry his burden).

Ultimately, the ALJ's conclusion that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments is adequately supported by his discussion of the evidence in the record.   *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990). Moreover, Plaintiff failed to provide contrary evidence supporting her theory that her impairments do indeed meet or equal a Listing, particularly that she demonstrates the requisite loss of function for the statutory period.   Therefore, the ALJ did not err at Step Three.

///

///

12

**3.     The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony**

Plaintiff next contends the ALJ failed to provide legally adequate reasons to reject her credibility. (Doc. 14 at 12-14).  The Court disagrees.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if she makes specific findings and provides clear and convincing reasons for doing so.  *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible."  *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").  Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Here, because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (AR 17), the ALJ's reasons must be clear and convincing. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-493 (9th Cir. 2015).  Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

The ALJ provided several reasons for rejecting Plaintiff's credibility, including Plaintiff's noncompliance with prescribed treatment, her questionable work history, and her overall conservative treatment.  AR 21. The Court finds that the ALJ's reliance on these factors are clear and convincing reasons to reject Plaintiff's credibility.

First, the ALJ considered Plaintiff's work history in two ways.  Initially, the ALJ noted Plaintiff's poor work history.  Plaintiff testified that she previously held various jobs ranging in duration from 4 to 6 months. An ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) ("The ALJ may consider at least the following factors when weighing the claimant's credibility:... '[her] work record ...'"); *see, e.g., Aarestad v. Comm'r of Soc. Sec.*, 450 Fed. App'x. 603, 604 (9th Cir. 2011) (unpublished) (affirming ALJ's determination of claimant's testimony as partially not credible where claimant "worked only sporadically before the alleged onset of disability (which suggests that her decision not to work was not based on disability)"); *Burkstrand v. Astrue*, 346 Fed. Appx. 177, 179 (9th Cir. 2009) (unpublished) ("limited work history" negatively impacted credibility).

The ALJ also noted that Plaintiff apparently provided questionable testimony as to her work history. Plaintiff testified that she worked part-time as a teacher's assistant in a child care center in a college for 6 months in 2010 and as a caregiver for senior citizens for 4 months.  AR 37-38, 44-46, 137. Plaintiff also testified that she reported this work on her tax return; however neither of these jobs appeared on Plaintiff's certified earnings report.  AR 45, 131.  Such inconsistencies are a proper basis for a negative credibility finding. *See Molina*, 674 F.3d at 1112 ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct").

Second, the ALJ noted that Plaintiff was not compliant with prescribed treatment.  AR 21. "[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ noted that Plaintiff was instructed to participate in education regarding care of her diabetes, to start taking a particular medication, to watch her diet, and check her glucose, but she failed to do so and physicians noted she was noncompliant regarding

14

her diabetes, hypertension, and pain medication.  AR 186, 188, 217, 223, 225, 313, 326, 328, 333, 341, 342. Indeed, Plaintiff refused to have her glucose tested on a number of occasions.  AR 310, 378, 384.  The ALJ also noted that Plaintiff cancelled or missed a number of appointments.  AR 21, 195, 196, 225. Plaintiff cannot obtain benefits if he or she fails to follow prescribed treatment that would enable her to work. 20 C.F.R. § 416.930.  It was not error for the ALJ to find that Plaintiff's subjective complaints lacked credibility based on her failure to follow prescribed treatment.

Finally, the ALJ noted that Plaintiff's treatment was conservative.  AR 21. Indeed, treatment notes in the record indicate that "Plaintiff responded favorabl[y] to epidural block, at this time it is reasonable to continue conservative care."  AR 219. Evidence of conservative treatment may be considered in a credibility determination, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment[.]").

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not credible. The ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater*, 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas,* 278 F.3d at 959. Accordingly, the ALJ's credibility findings are free of legal error.

**4.    Plaintiff's English Ability**

Lastly, Plaintiff challenges the ALJ's finding that she could communicate in English. Plaintiff argues that there was no substantial evidence to support the ALJ's finding regarding Plaintiff's ability to speak English. The Court disagrees.

In assessing Plaintiff's credibility, the ALJ found that "the claimant alleges an inability to communicate in English.  However, I note that the claimant attended and completed college courses for approximately four years.  She was a care provider for senior citizens for four months. The claimant states that prior to that she was a teacher assistant for six months in 2010."  Also, "she completed written agency questionnaires in English."  AR 21. There is no indication that Plaintiff's classes were in Russian.  Additionally, although Plaintiff purported to need an interpreter at the administrative hearing and at a consultative exam, she did not need the assistance of an interpreter

during her medical exams with her own physicians. AR 211, 249, 251, 289. *See Flores v. Colvin*, 546 Fed.Appx. 638, 640 (9th Cir. 2013) (unpublished) (ALJ properly found that claimant "could understand basic verbal English" based on evidence that claimant "was taking courses in English and math at a community college," and he had "worked for twelve years in a grocery store and was required to converse, at least to some degree, in English with his supervisors, co-workers, and customers"), *citing Burch*, 400 F.3d at 681 (holding that when evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld).  The Court finds that substantial record evidence supports the ALJ's determination that Plaintiff is capable of communicating in English. *See* § 416.964(b)(5).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Nina Chiley.

IT IS SO ORDERED.

Dated:   **March 11, 2016**              /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE